Filed 8/30/23 P. v. Gooden CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ALLEN GOODEN,<br><br>     Defendant and Appellant. | D080676<br><br><br>(Super. Ct. No. CR61365) |


APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge. Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel B. Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

Allen Gooden, who was convicted by a jury of first degree murder in 1983, appeals from an order denying his petition for resentencing pursuant to Penal Code section 1172.6.[1]

We conclude that substantial evidence supports the trial court's order denying the petition based on its finding that, in committing felony murder, Gooden was a major participant in the underlying burglary who acted with reckless indifference to human life. We accordingly affirm the order denying the petition for resentencing.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 1982, Olivia Rel was murdered while Gooden and his then-wife, Sheryl, were burglarizing Rel's apartment. The cause of death was a stab wound to the neck. Approximately two months after the murder, Gooden confessed to law enforcement about his involvement in the crime.

Gooden told detectives that on the morning of the murder, he and Sheryl woke up at 6:30 a.m. and began to carry out the plan they had been developing over the past three days. Specifically, they planned to burglarize their neighbor Rel's apartment to get money to buy drugs and so that Sheryl could take some of Rel's personal property that she wanted for herself. That morning, Gooden and Sheryl gained entry to Rel's apartment when Sheryl knocked on Rel's door and claimed she needed to use Rel's telephone because she was having a miscarriage. While Rel was helping Sheryl make a phone

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) Although Gooden filed his petition under former section 1170.95, for clarity and conformity, we will refer to the statute as section 1172.6 throughout this opinion.

call, Gooden grabbed Rel's neck and put a sock in her mouth. Sheryl and Gooden dragged Rel into the back room and tied her up with elastic cord that Gooden brought with him. Gooden also gagged Rel, tied her mouth, and put a pillow over her face.

According to Gooden, at some point during the burglary, Sheryl convinced him that they had to kill Rel, but he decided Sheryl should do it. Specifically, Gooden explained, "I was thinking, ah I was in the frame of mind we got everything let's just go and leave her you know, but my wife had brought, brought me back to reality and to grips of myself to realize I say we have to kill her, but I said I'm not going to kill her, you kill her, I don't want it on my conscience."

Gooden and Sheryl did not bring any weapons with them. Therefore, Sheryl took a knife out of Rel's kitchen sink to use as a murder weapon. According to Gooden, "[Sheryl] tried to cut [Rel's] throat with it like slice across the throat, but it was real dull so it didn't work, so she went in the kitchen and looked and [*sic*] the sewing machine box where she noticed the scissors were at and she stabbed her in the neck." Gooden watched as Sheryl killed Rel with the scissors.

Gooden explained that during the burglary, he and Sheryl took jewelry, stereo equipment, a television, clothes, a fur coat, a camera, and cash. According to Gooden, after Sheryl stabbed Rel, he attempted to help Sheryl remove some of the jewelry from around Rel's neck by using washcloths to try to "wash the majority of the blood that was running from [Rel's] neck," but he "couldn't stomach it," so he went into the other room to pack up the stereo equipment. Gooden stated that he made two separate trips from Rel's apartment to carry away the television and the stereo equipment, and then he returned a final time "to double check." At the conclusion of the burglary,

3

according to Gooden, he "washed the rags out and cleaned up all the fingerprints in the house." Gooden then told Sheryl that she should go to work for "a good alibi." Gooden and Sheryl sold or disposed of the items they took, and they used the proceeds to buy cocaine.

In 1983, a jury convicted Gooden of burglary of an inhabited residence (§§ 459, 667), receiving stolen property (§ 496.1), and first degree murder (§ 187). In connection with the murder count, the jury made a finding that Gooden did *not* personally use a deadly weapon. (§ 12022, subd. (b)).[2] Gooden was sentenced to prison for a term of 25 years to life.

In January 2019, Gooden filed a petition for resentencing pursuant to section 1172.6 and requested appointment of counsel. After two appellate court proceedings that are not relevant to the issues currently before us,[3] the trial court determined that Gooden made a prima facie case that he was

---

[2] As the People have explained, in 1984, the conviction for receiving stolen property was reversed on appeal. (*People v. Gooden* (Dec. 12, 1984, D000052) [nonpub. opn].) The trial court expressly did not consider the 1984 opinion in ruling on Gooden's petition for resentencing, and it is accordingly not included in the appellate record. However, we take judicial notice of the 1984 opinion on our own motion solely for the purpose of setting forth a complete and accurate procedural history of Gooden's criminal conviction and sentence. (See § 1172.6, subd. (d)(3) [in ruling on a petition for resentencing, "[t]he court may . . . consider the procedural history of the case recited in any prior appellate opinion."].)

[3] Specifically, in 2019, we denied relief sought by San Diego District Attorney in an original consolidated proceeding in mandate premised on the contention that Senate Bill No. 1437 (2017-2018 Reg. Sess.), which enacted former section 1170.95, was invalid because it improperly amended two voter initiatives. (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270.) In 2021, we reversed the trial court's summary denial of Gooden's petition on the ground that he had not made a prima facie case for relief, and we remanded for further proceedings. (*People v. Gooden* (Mar. 5, 2021, D077814) [nonpub. opn.].)

entitled to relief, issued an order to show cause, and held an evidentiary hearing. The evidence that the trial court considered was comprised of Gooden's 1982 confession, Gooden's statements contained in a comprehensive risk assessment prepared for the Board of Parole Hearings in 2014, and the reporter's transcripts from Gooden's jury trial.

The 2014 comprehensive risk assessment contains statements by Gooden that mirror the content of his 1982 confession. "Mr. Gooden indicated that his wife, and not he, stabbed the victim with a pair of scissors, when a knife proved too dull to slit her throat. . . . They then took items from the victim's apartment that they could sell for drug money. . . . [¶] Killing the victim, he indicated, was necessary because she knew and could identify him (them)."

The People argued in the trial court that they had met their burden to show that Gooden is guilty of murder under the current definition of felony murder (§ 189, subd (e)(3)) because he was a major participant in the underlying burglary and he acted with reckless indifference to human life. Gooden argued that the petition for resentencing should be granted because, although he "was a willing participant in the underlying felony, he never intended for Ms. Rel to be killed. He did not act with reckless disregard for human life."

On June 29, 2022, the trial court issued an order denying Gooden's petition for resentencing. The trial court concluded that Gooden is guilty of murder under the current felony murder law because he was a major participant in the burglary and he acted with reckless indifference to human life. Gooden appeals from the order denying his petition for resentencing.

5

DISCUSSION

A.   *Applicable Legal Standards*

Effective January 1, 2019, by enacting Senate Bill No. 1437, the Legislature significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine.  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)  As relevant here, the Penal Code now limits liability under a felony-murder theory to three categories of persons: (1) the "actual killer" (§ 189, subd. (e)(1)); (2) a person who "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)); and (3) a person who was a "major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2" (*id.*, subd. (e)(3)).

Subdivision (e)(3) of section 189 expressly incorporates section 190.2, subdivision (d), which describes the special circumstance finding that is required in a felony-murder case to determine that the defendant may be sentenced to death or life without possibility of parole.  Specifically, section 190.2, subdivision (d) "provides that 'every person, not the actual killer, who, with reckless indifference to human life and as a major participant' aids or abets an enumerated felony, including attempted robbery, that results in death may be convicted of special circumstance murder and sentenced to death or to life imprisonment without the possibility of parole.  The statute, by its text, imposes an actus reus requirement, major participation in the enumerated felony, and a mens rea requirement, reckless indifference to human life."  (*In re Scoggins* (2020) 9 Cal.5th 667, 674 (*Scoggins*).)

When the Legislature "amended Penal Code section 189 to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in [*People v. Banks* (2015) 61 Cal.4th 788] and [*People v. Clark* (2016) 63 Cal.4th 522]," which themselves interpreted section 190.2, subdivision (d). (*Strong, supra*, 13 Cal.5th at p. 710.) In the context of a special circumstance finding, "*Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Id.* at pp. 706-707.)

At the same time that it amended the definition of murder, the Legislature established a procedure to allow a person who could not have been convicted under the new law to file a petition to obtain an order vacating the petitioner's conviction and resentencing the petitioner on any remaining counts. (§ 1172.6.) Under this statutory procedure, after a petitioner makes a prima facie case of eligibility, the trial court holds an evidentiary hearing to determine whether the petitioner should be granted relief. (§ 1172.6, subds. (c), (d).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).) "[T]he trial court's role in a section 1172.6 proceeding is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder under the law as amended by

7

Senate Bill No. 1437." (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123 (*Guiffreda*).)

In reviewing the trial court's order denying a petition for resentencing, we review the trial court's factual findings for substantial evidence. (*Guiffreda, supra*, 87 Cal.App.5th at p. 125.) " 'Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' [Citation.] We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision." (*Ibid.*)[4]

---

[4] Gooden points out that the trial court's order contains certain factual descriptions that are not supported by the record. Specifically, the trial court stated, "[W]hen his wife began to murder the victim with a knife that apparently was too dull, [Gooden] stayed with the victim while his wife obtained the scissors used to fatally stab the victim in the neck. Thus, [Gooden] not only failed to take any action to reduce the level of violence—he actively kept the victim in place so his wife could complete the murder." Gooden correctly observes that the record contains no definitive evidence, one way or another, as to whether he stayed with Rel while Sheryl retrieved the scissors. However, we review the trial court's ruling, not its reasoning. (*People v. Turner* (2020) 10 Cal.5th 786, 807.) In a resentencing proceeding under section 1172.6, regardless of the trial court's reasoning, we conduct our review by examining the record " ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) Moreover, the detail of whether Gooden stayed with Rel while Sheryl retrieved the scissors is not material to our conclusion that substantial evidence supports the trial court's ultimate conclusion that Gooden is guilty of felony murder under current law.

8

B.   *Gooden's Challenge to the Trial Court's Consideration of Statements in the Comprehensive Risk Assessment Lacks Merit*

Before turning to our evaluation of the sufficiency of the evidence, we address Gooden's contention that the trial court erred in considering the statements by Gooden that appear in the comprehensive risk assessment prepared for the Board of Parole Hearings in 2014.  Specifically, Gooden challenges the trial court's ruling, set forth in its written order, that the comprehensive risk assessment would be "[r]eceived for [Gooden's] statements only, and not for any opinions, conclusions, or any other material contained in the report."  (Bolding and italics omitted.)

On appeal, Gooden contends that defense counsel objected to the admission of the comprehensive risk assessment.  As Gooden characterizes the record, "Defense counsel objected to the introduction of this document on grounds that it was inadmissible based on due process and equal protection. . . .  She explained that what happens at the Parole Board is essentially a coercive environment because people are counseled and encouraged to admit to crimes in order to gain their release."

We reject Gooden's appellate challenge because, contrary to Gooden's representation on appeal, defense counsel did not object that it was improper for the trial court to consider Gooden's statements that appear in the comprehensive risk assessment.[5]  Relying on *People v. Myles* (2021) 69 Cal.App.5th 688, defense counsel advocated for *precisely* the ruling that

---

[5]   In stating that defense counsel objected to the admission of the comprehensive risk assessment on the ground of due process and equal protection, Gooden's appellate brief erroneously conflates defense counsel's discussion of her objection to the admission of any *transcript* from Gooden's parole hearing on the grounds of due process and equal protection, with defense counsel's statements about the propriety of admitting the comprehensive risk assessment.

9

the trial court ended up making, namely, that it could consider any statements against interest made by Gooden that appeared in the comprehensive risk assessment.  In setting forth her position regarding the comprehensive risk assessment, defense counsel stated to the trial court, "*Myles* stands for the proposition that it can be used only to the extent that there is a statement against interest.  All of the peripheral information about any particular Defendant's risk, any particular Defendant's behavior, any irrelevant assessments about his suitability for parole are not admissible against this client at this time.  *So I would ask the Court pursuant to Myles to only admit any statements that would be statements against penal interests of Mr. Gooden.*"  (Italics added.)

"[A] challenge to the admission of evidence is not preserved for appeal unless a specific and timely objection was made below."  (*People v. Anderson* (2001) 25 Cal.4th 543, 586; see also Evid. Code, § 353, subd. (a) [error in admitting evidence may not be basis for reversal of judgment unless "an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion"].)  Here, because defense counsel not only failed to object, but expressly *agreed to*, the admission of Gooden's statements in the comprehensive risk assessment, Gooden may not challenge the admission of that evidence on appeal.  (*People v. Hensley* (2014) 59 Cal.4th 788, 811 [appellant's challenge to the admission of evidence was waived when defense counsel told the trial court, " 'I'm not objecting' "].)  We therefore reject Gooden's challenge to the trial court's consideration of Gooden's statements in the comprehensive risk assessment.

C.    *Substantial Evidence Supports a Finding That Gooden Was a Major Participant and Acted with Reckless Indifference to Human Life*

Turning to our evaluation of the sufficiency of the evidence, we note that the trial court's ruling was premised on two separate factual findings required by section 189, subdivision (e)(3): (1) Gooden was a major participant in the burglary of Rel's apartment; and (2) Gooden acted with reckless indifference to human life. " 'These requirements significantly overlap . . . , for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark, supra*, 63 Cal.4th at p. 615.) Determining whether the two requirements are met "requires a fact-intensive, individualized inquiry." (*Scoggins, supra*, 9 Cal.5th at p. 683.)

1.    *Major Participant*

We first examine whether substantial evidence supports a finding that Gooden was a major participant in the burglary.

"The 'major participant' element refers to 'the defendant's *personal* role in the crimes leading to the victim's death' and is intended to reflect 'the defendant's individual responsibility for the loss of life, *not just his or her vicarious responsibility for the underlying crime.*' (*Banks, supra*, 61 Cal.4th at p. 801, italics added.) In other words, the focus is on the defendant's own culpability, not on the others who committed the crime and killed the victim. (*Ibid.*)" (*People v. Madrigal* (2023) 93 Cal.App.5th 219, 238.)

Our Supreme Court has explained that in evaluating whether a defendant was a major participant in an underlying felony it is instructive to look to the specific facts of the United States Supreme Court cases that originated the rule that a defendant who is a major participant in an underlying felony and acted with reckless indifference to human life is constitutionally eligible for the death penalty. (*Banks, supra*, 61 Cal.4th at

11

p. 802 [citing *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*) and *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*)].) "With respect to conduct, *Tison* and *Enmund* establish that a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks*, at p. 802.) "Earl Enmund was just a getaway driver, sitting in a car away from the murders." (*Id.* at pp. 802-803, italics omitted.) In contrast, with respect to the two defendants in *Tison,* "[f]ar from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each [defendant] was actively involved in every element of the kidnaping-robbery and was physically present during the entire sequence of criminal activity culminating in the murder of the [victims] and the subsequent flight." (*Tison*, at p. 158.) Specifically, both of the defendants supplied weapons to facilitate a prison break of two persons, one of whom had killed a guard during a previous escape. (*Banks*, at p. 802.) As part of the prison break in *Tison*, the two defendants participated in "stopping and capturing an 'innocent family whose fate was then entrusted to the known killers [they] had previously armed.' [Citation.] They robbed the family and held them at gunpoint while the two murderers deliberated whether the family should live or die, then stood by while all four members were shot." (*Banks*, at p. 802.) After the killings, the defendants "chose to aid those whom [they] had placed in the position to kill rather than their victims." (*Tison*, at p. 152.)

"Comparing the facts of *Enmund* with the facts of *Tison*, the *Banks* court derived the following nonexclusive list of factors bearing on whether an aider and abettor of felony murder was a 'major participant' under section 190.2, subdivision (d): 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the

12

defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?' (*Banks, supra*, 61 Cal.4th at p. 803, fn. omitted.)  'No one of these considerations is necessary, nor is any one of them necessarily sufficient.' (*Ibid.*)  To decide whether an accomplice is a major participant, the fact finder must consider the totality of the circumstances.  (*Id.* at p. 802.)" (*People v. Montanez* (2023) 91 Cal.App.5th 245, 267-268.)

Although Gooden's opening appellate brief contains an argument heading and a single sentence stating that insufficient evidence supports the trial court's finding that he was a major participant in the burglary, Gooden makes no substantive argument either applying the factors identified in *Banks, supra*, 61 Cal.4th at page 803, or explaining in any other manner why he was not a major participant in the burglary.  We could treat Gooden's failure to develop the argument as a forfeiture of the issue.  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"].)  However, because there is "significant[ ] overlap" between the issue of whether someone is a major participant in a felony and whether someone acted with reckless indifference to human life (*Clark, supra*, 63 Cal.4th at p. 615), we will exercise our discretion to address whether substantial evidence supports the trial court's finding that Gooden was a major participant in the burglary.

For the first *Banks* factor, we look to the role that Gooden played in planning the criminal enterprise. (*Banks, supra*, 61 Cal.4th at p. 803.) Based on Gooden's 1982 statement to the detectives, the trial court could reasonably conclude that Gooden and his wife were equally involved in planning the burglary. Specifically, as Gooden stated, on the morning of the burglary, "we both was ready to go and do what we'd been planning to do for about three days." This factor weighs in favor of Gooden being a major participant.

For the second *Banks* factor, we examine Gooden's role in supplying or using lethal weapons. (*Banks, supra*, 61 Cal.4th at p. 803.) Here, there is no evidence that Gooden either supplied or used lethal weapons.

For the third *Banks* factor, we ask what awareness Gooden had of the particular dangers posed by the nature of the crime, the weapons used, or the past experience or conduct of the other participants. (*Banks, supra*, 61 Cal.4th at p. 803.) In some cases, as here, "[t]he warning signs that the crime[ ] pose[s] a serious risk of danger to the victim[ ]" will "accumulate[ ] as the crime[ ] unfold[s]." (*Montanez, supra*, 91 Cal.App.5th at p. 273; see also *In re Harper* (2022) 76 Cal.App.5th 450, 461 ["Whatever petitioner may or may not have believed about the plan for the robbery at the outset . . . , he was clearly aware of the risk of death once the robbery was underway" when another participant "came out and asked where she could find some knives, [and] petitioner thought to himself, ' "[A]re they gonna stab him . . . ?" ' Yet, he still told her where to find the knives."].) Here, Gooden clearly became aware of the danger to Rel in the course of the burglary, as he and Sheryl discussed the need to kill Rel, and agreed to that plan. This factor weighs heavily in favor of a finding that Gooden was a major participant.

For the fourth *Banks* factor, we consider whether Gooden was present at the scene of the killing, in a position to facilitate or prevent the actual murder, and whether his own actions or inaction play a particular role in the death. (*Banks, supra*, 61 Cal.4th at p. 803.) Here, it is clear from the statement Gooden made to detectives that he was present in the apartment during the killing and watched Sheryl stab Rel in the neck. More importantly, Gooden agreed with Sheryl that Rel should be killed and told Sheryl that she should do it instead of him. This factor, too, weighs heavily in favor of a major participant finding.

For the final *Banks* factor, we focus on what Gooden did after lethal force was used. (*Banks, supra*, 61 Cal.4th at p. 803.) Here, Gooden made no attempt to render aid to Rel. Instead, he proceeded to complete the burglary, including trying to remove necklaces while Rel was covered with blood and taking steps to hide his and Sheryl's involvement in the crime. This final factor also weighs in favor of a finding that Gooden was a major participant.

Based on the totality of the circumstances, Gooden easily falls at the *Tison* "pole of the *Tison-Enmund* spectrum" (*Banks, supra*, 61 Cal.4th at p. 805) with respect to whether he was a major participant in the underlying burglary. As in *Tison*, although Gooden was not the person who committed the killing during the underlying felony, he was present while it was "deliberated whether [Rel] should live or die," "stood by" while Rel was killed, and then continued the criminal enterprise with Sheryl instead of aiding the victim. (*Banks*, at p. 802.) Gooden was a major participant because, as in *Tison*, he "was actively involved in every element of the [underlying felony] and was physically present during the entire sequence of criminal activity culminating in the murder." (*Tison, supra*, 481 U.S. at p. 158.) If anything, Gooden qualifies as a major participant to a *greater* extent than the

15

defendants in *Tison*, as he was directly involved in the discussions about whether Rel should die, specifically agreed on the killing, and directed Sheryl that she should carry it out.

2. *Reckless Indifference to Human Life*

The next question is whether substantial evidence supports the trial court's finding that Gooden acted with reckless indifference to human life.

In *Clark*, our Supreme Court "explained that reckless indifference to human life has subjective and objective elements. 'The subjective element is the defendant's conscious disregard of risks known to him or her.' ([*Clark, supra*, 63 Cal.4th] at p. 617.) ' "[T]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create." ' ([*Scoggins, supra*, 9 Cal.5th at p. 677].) ' "Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to establish reckless indifference to human life; "only knowingly creating a 'grave risk of death' " satisfies the statutory requirement.' (*Ibid.*)" (*Montanez, supra*, 91 Cal.App.5th at pp. 268-269.)

"The objective component is determined by considering what ' "a law-abiding person would observe in the actor's situation." ' (*Clark, supra*, 63 Cal.4th at p. 617.) ' " '[T]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " ' (*Scoggins, supra*, 9 Cal.5th at p. 677.) At the same time, 'a defendant's good faith but unreasonable belief that he or she was not posing a risk to human life in pursuing the felony does not suffice

16

to foreclose a determination of reckless indifference to human life under *Tison.*' (*Clark*, at p. 622.)" (*Montanez, supra*, 91 Cal.App.5th at p. 269.)

Our Supreme Court in *Clark* "enumerated a five-factor test to determine whether a defendant acted with reckless indifference to human life, clarifying that no one factor is necessary, nor is any sufficient by itself. The first factor is the defendant's knowledge of weapons used, [the defendant's] own use of weapons, and the number of weapons involved. ([*Clark, supra*, 63 Cal.4th] at p. 618.) . . . The second factor is whether the defendant was physically present at the crime scene and whether [the defendant] had opportunities to restrain the crime or aid the victim(s). (*Id.* at p. 619.) A defendant's presence may be particularly significant where 'the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force.' (*Ibid.*) [¶] The third factor is the duration of the felony; crimes of longer duration present greater risk of violence and therefore evince more reckless indifference. ([*Id.*] at p. 620.) The fourth factor is the defendant's knowledge of his or her coparticipants' likelihood of killing. (*Id.* at p. 621.) . . . Finally, the fifth factor is whether the defendant made any efforts to minimize the risk of violence during the felony. (*Ibid.*)" (*Guiffreda, supra*, 87 Cal.App.5th at pp. 124-125.)

For the first *Clark* factor, we look to Gooden's knowledge of, and use of, weapons. (*Guiffreda, supra*, 87 Cal.App.5th at p. 124.) Gooden clearly had knowledge during the commission of the burglary that Sheryl was using a weapon to kill Rel. He first became aware that Sheryl was using a weapon when she used a knife that was too dull, and he then was present as Sheryl used the scissors to kill Rel. Although Gooden did not use the weapons himself, by telling Sheryl that he agreed that Rel should be killed and that

17

Sheryl should do it instead of him, he impliedly endorsed Sheryl's use of a deadly weapon. This factor accordingly weighs against Gooden.

For the second *Clark* factor, we examine Gooden's presence at the crime scene and opportunity to intervene against the killing or in aid of the victim. (*Guiffreda, supra*, 87 Cal.App.5th at p. 124.) This factor weighs heavily against Gooden. He was present during the entire burglary, including while Rel was killed; he agreed with Sheryl that Rey should be killed; and he did nothing to aid Rel while she was dying. Gooden contends in his appellate brief that he "may not have called 911 out of loyalty to his wife or out of fear because she had a weapon and was not hesitant to use it." He also suggests that he was "subject to a need to obey his wife." However, the trial court could reasonably have reached a different inference based on the facts. Specifically, Gooden explained during the comprehensive risk assessment that he reached the conclusion that killing Rel "was necessary because she knew and could identify him (them)," and he told the detectives in 1982 that he "realize[d] . . . we have to kill her."

The third *Clark* factor directs us to look at the duration of the underlying felony. (*Guiffreda, supra*, 87 Cal.App.5th at p. 124.) Applying this factor, we observe that there was ample time during the burglary for Sheryl and Gooden to discuss the need to kill Rel and for Gooden to direct Sheryl to accomplish the killing. Sheryl's first attempt with the knife was unsuccessful, which prolonged the process of killing Rel. Gooden could have changed his mind about the killing while Sheryl was retrieving the scissors and could have intervened to try to stop her, but he did not do so. Accordingly, this factor weighs against Gooden.

For the fourth *Clark* factor, we inquire whether Gooden knew about Sheryl's likelihood of killing. (*Guiffreda, supra*, 87 Cal.App.5th at p. 124.)

18

Our Supreme Court has made clear that a defendant's knowledge of a coparticipant's likelihood of killing "may occur during the felony." (*Clark, supra*, 63 Cal.4th at p. 621.) Here, during the course of the burglary, Gooden and Sheryl expressly discussed the need to kill Rel, and Gooden told Sheryl that she should do the killing. Therefore, Gooden indisputably became aware, during the course of the burglary, that Sheryl was likely to kill Rel. Gooden argues that "there was no evidence that [he] was aware of any past violent acts by his wife." That may be true, but it pales in comparison to the fact that Gooden learned *during* the burglary that Sheryl wanted to kill Rel and agreed that she should do so. The fourth factor accordingly weighs against Gooden.

For the fifth and final *Clark* factor, we examine whether Gooden made any efforts to minimize the risk of violence during the burglary. (*Guiffreda, supra*, 87 Cal.App.5th at pp. 124-125.) There is no evidence that Gooden made any effort to minimize the risk to Rel. On the contrary, he agreed with Sheryl that Rel should be killed, and he instructed Sheryl to do so. This factor weighs against Gooden.

Considering the totality of the circumstances, including our application of the *Clark* factors, we conclude that substantial evidence supports a finding that Gooden acted with reckless indifference to human life during the burglary. The evidence supports a finding that, with respect to his *subjective* state of mind, Gooden understood that there was a high risk that Rel would die based on the fact that he and Sheryl agreed to that course of action. Further, from an *objective* standpoint, any reasonable person would know that Gooden's act of agreeing with Sheryl that Rel should be killed and then standing by while Sheryl took action, was likely to result in Rel's death.

In sum, substantial evidence supports a finding that Gooden is guilty of murder under the current felony-murder law because he was a major participant in the underlying burglary and he acted with reckless indifference to human life.  (§ 189, subd. (e)(3).)  We accordingly affirm the trial court's order denying Gooden's petition for resentencing.

## DISPOSITION

The order denying the petition for resentencing is affirmed.


IRION, J.


WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.